

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **In re:** | § | **CHAPTER 11 CASE** |
| | § | |
| **INTEGRA HOSPITAL PLANO,** | § | **CASE NO. 08-42998** |
| **L.L.C.,** *et. al.* | § | |
| | § | **Jointly Administered** |
| **Debtors.** | § | |
| | § | |

## FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 363, AND 365 AND RULES 2002, 6004, 6006, AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF

Came on for consideration the *Motion for an Order Pursuant to 11 U.S.C. §§ 105, 363, and 365 and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Sale of Substantially All of the Debtors' Assets; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* (the "Motion")[1] filed by Integra Hospital Plano, L.L.C. ("Integra Plano"), Integra Hospital Baton Rouge, L.L.C. ("Integra Baton Rouge"), Integra Hospital Management, L.L.C. ("Integra Management") and Integra Healthcare Holdings, Ltd. ("Integra Holdings," together with Integra Plano, Integra Baton Rouge and Integra Management, the "Debtors" or "Companies"), the Debtors in the above captioned cases (the "Cases"); and the Court having considered all objections to the relief sought by the Debtors; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual

---

[1] Capitalized terms unless otherwise defined herein shall have the same meaning as ascribed to them in the *Motion for an Order Pursuant to 11 U.S.C. §§ 105, 363, and 365 and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Sale of Substantially All of the Debtor's Assets; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C0 Granting Related Relief* or the Asset Purchase Agreement.

bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein, and it further appearing that the relief requested in the Motion is in the best interests of the Debtors, their creditors, and all other parties in the Debtors' chapter 11 case; and based upon the agreements and consents to the sale announced on the record and contained herein:

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bank. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bank. P. 9014.

B.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.   To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      The Court has jurisdiction over the Motion and the transactions contemplated by the Sale (as defined below) pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of the case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

D.      The statutory predicates for relief sought in the Motion are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.

E.      On November 17, 2008, the Court entered an *Order Granting Amended Emergency Motion for an Order (A) Approving Bid Procedures for Sale of Substantially All of Debtors' Assets; (B) Scheduling a Hearing to Consider the Form and Manner of Notices; (C) Establishing Procedures Relating to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; and (D) Granting Related Relief* (the "Bid Procedure Order") (Docket No. 62).  Subsequently, on November 25, 2008, the

Court entered an *Order Granting Emergency Motion to Amend Bid Procedures* (the "Amended Bid Procedure Order") (Docket No. 143).

F.      On December 19, 2008, the Court entered an *Order Granting Motion for Approval of Bid Protections and Break-Up Fee* (the "Bid Protections Order") (Docket No. 204).

G.      As evidenced by the certificates of service previously filed with the Court, and based on the representations of counsel at the Hearing, (i) reasonable, proper, timely, adequate and sufficient notice of the Motion, the Hearing, and the Sale (as herein defined) has been provided in accordance with Bankruptcy Rules 2002(a), 6004(a), and 9014, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and reasonably calculated to apprise interested parties of the Sale of the Debtors' assets and (iii) no other or further notice of the Motion, the Hearing, or the Sale is or shall be required.

H.      On January 2, 2009, the Debtors held an auction (the "Auction") in the offices of Cox Smith Matthews Incorporated.      Rockwall Rehab Hospitals, Ltd. (hereinafter, the "Purchaser") submitted the highest bid for the purchase of the Acquired Assets as defined below.

I.      On or about January 12, 2009, Debtors filed a Motion for an Order Pursuant to 11 U.S.C. §§ 105, 363, and 365 and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Sale of Substantially all of Debtors' Assets; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief wherein the Debtors seek to sell the assets of the Debtors to Purchaser (the "Sale Motion").

J.      Bruce Buchanan, the Chief Restructuring Officer, pursuant to the *Order Approving the Motion for Entry of Interim and Final Orders Authorizing the Employment of and Appointment of a Chief Restructuring Officer of the Debtors* entered on November 17, 2008, is

authorized to execute the Asset Purchase Agreement (the "APA") filed on February 5, 2009 as Docket No. 299, Exhibit 1, and any and all documents in connection with the successful bid received from Purchaser at the Auction on January 2, 2009 for purchase of all assets as described in the APA (the "Acquired Assets").

K.      The sale to the Purchaser (the "Sale") is in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

L.      The Sale was negotiated, proposed and entered into by the Debtors and Purchaser without collusion, in good faith, and from arm's length bargaining positions. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Sale to be avoided under 11 U.S.C. § 363(n).

M.      Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.

N.      The consideration provided by Purchaser in the amount of Six Million Seven Hundred Eighty Thousand Dollars ($6,780,000) plus the Purchaser's agreement to pay the real estate taxes with respect to the respective Integra Plano and Integra Baton Rouge facilities during the period that it leases the premises as well as for the period of time in 2009 that the Debtors were hold over tenants in 2009: (i) is fair and reasonable; (ii) is the highest and best offer for the Acquired Assets; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code.

O.      A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including but not limited to: (i) the Office of the United States Trustee for the Eastern District of Texas (the "U.S. Trustee"); (ii) Bank of Texas, N.A. ("BOT"); (iii) Contemporary Healthcare Fund, I, L.P.

("CHF"); (iv) AmerisourceBergen Drug Corporation ("Amerisource"); (v) Texas Capital Bank; (vi) Siemens Medical Solutions USA ("Siemens"); and (vii) the Official Committee of Unsecured Creditors (the "Committee").

P.    The Sale must be approved and consummated promptly in order to avoid further deterioration in the value of the Debtors' assets.

Q.    The Debtors continue to use cash collateral to operate the two hospitals. The Debtors would be forced to close the hospitals if they were not permitted to use cash collateral. Mr. Buchanan testified that the value of the account receivables for Integra Plano as of January 20, 2009 is approximately Three Million Three Hundred Thousand Dollars ($3,300,000). Mr. Buchanan also testified that the value of the account receivables for Integra Baton Rouge as of January 20, 2009 is approximately One Million Seven Hundred Thousand Dollars ($1,700,000). BOT, Amerisource and CHF hold liens against the Debtors' account receivables. Currently, Integra Plano and Integra Baton Rouge are holdover tenants. HCP, the landlord for Integra Plano and Integra Baton Rouge, has agreed to waive the rent for November, December and January 1-15, 2009 provided that as a result of this Sale there is an approved operator in place over both hospitals. HCP and CHF purport to have valid, perfected liens against the hospital licenses and the permits for Integra Plano and Integra Baton Rouge. To the extent there are enforceable liens against the hospital licenses and the permits, which the Debtors dispute, such liens are released effective the Closing Date. Under the consolidated budget introduced at the hearing, the Debtors do not have sufficient funds to pay the rent for these months or the balance of January. Thus, the sale to the Purchaser prevents the shut down of the operations at both hospitals.

R.     The transfer of the Acquired Assets to the Purchaser will be a legal, valid, and effective transfer of the Acquired Assets and will vest the Purchaser with all right, title and interest to the Acquired Assets free and clear of any claim, judgment, license, lease, sublease, lien, pledge, option, charge, easement, security interest, deed of trust, mortgage, right-of-way, encroachment, building or use restriction, conditional sales agreement, title retention arrangement which is intended as security, capitalized lease under generally accepted accounting principles, encumbrance or other right of third parties, whether voluntarily incurred or arising by operation of law, and includes, without limitation, any agreement to give any of the foregoing in the future, and any contingent sale or other title retention agreement or lease in the nature thereof, and any "claim", "lien", or "security interest" as those terms are defined in the United States Bankruptcy Code (collectively the "Interests") except as otherwise set forth in this Order.

S.     BOT holds a first and prior lien and security interest in the Acquired Assets of the Debtors except the license and permits which were deleted and pledged to HCP.  CHF holds a lien and security interest in the Acquired Assets which is subordinate to the lien and security interest of BOT.  Amerisource claims a lien in the Acquired Assets of the Debtors which is junior to the lien of BOT.  The claim of BOT exceeds the purchase price for the Acquired Assets. BOT, CHF and Amerisource each filed an objection to the Sale Motion and sale of the Acquired Assets to the Purchaser.

T.     The Debtor may sell the Acquired Assets free and clear of Interests in accordance with section 363(f) of the Bankruptcy Code because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests who did not object to the Sale or who have withdrawn their objection to the Motion based on agreements herein are deemed to have consented pursuant to section 363(f)(2) of the

Bankruptcy Code. BOT, Amerisource and CHF have withdrawn their objections to the Sale and consent to the Sale, all subject to satisfaction of the terms of, and conditions to, the settlement stated on the record of the hearing held on January 20, 2009 in these Cases and documented in this Order. Those holders of Interests, other than BOT, Amerisource and CHF, who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected.

U.     The unexpired leases and executory contracts to be assumed and assigned to the Purchaser (collectively, the "Assumed Contracts") are valid and binding, in full force and effect, and are enforceable in accordance with their terms, and are property of the Debtors' estates pursuant to § 541(a) of the Bankruptcy Code. A list of the contracts which may be assumed was filed on February 5, 2009 as Docket No. 299, Exhibit 2. The Purchaser shall file a final list of Assumed Contracts no later than January 27, 2009 with seven (7) day negative notice language. Objections, if any, to the assumption shall be heard on February 2, 2009 at 1:30 p.m.

V.     Approval of the Asset Purchase Agreement and related sales documents (collectively, the "APA"), assignment of the Assumed Contracts and consummation of the transactions contemplated thereby (the "Sale") is in the best interest of the Debtors, their creditors, their estates, and other parties in interest. The terms of the APA and any related sale documents are hereby incorporated by reference into this Order and the same terms are approved in all respects unless such provision is specifically invalidated by a specific recital in this Order or subsequent order of this Court.

W.     The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if the Court did not enter an order determining that the sale of the Acquired

Assets to Purchaser was free and clear of all Interests of any kind or nature whatsoever, including, but not limited to, (i) any employment or labor agreements; (ii) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (iii) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related Claim, including without limitation Claims that might otherwise arise under or pursuant to (a) the Employee Retirement, Income, Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973; (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967; (iv) environmental Claims or Liens arising from conditions first existing on or prior to the Closing (as defined in the APA) (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, *et seq.* or similar state statute; (v) any bulk sales or similar law; and (vi) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended.

X.     The Cure Costs as listed on Exhibit 2, filed on February 5, 2009 as Docket No. 299, are fixed and allowed as set forth therein unless, otherwise objected to as set forth in Paragraph U above.  The Debtors and the Purchaser have (i) cured, or have provided adequate assurance of cure, of all defaults under the Assumed Contracts, if any, existing before the date of this Order, within the meaning of § 365(b)(1)(A).  The Cure Costs if not already paid, shall be paid to the non-debtor contracting party no later than the date the sales transaction to the Purchaser closes (the "Closing Date").

The Court having considered the Motion finds that it was properly served and that good cause exists for the entry of the following order.

**NOW THEREFORE, THE COURT HEREBY ORDERS, ADJUDGES, AND DECREES AS FOLLOWS:**

<u>**General Provisions**</u>

1.      The Motion is granted, as further described herein and subject to the provisions of this Order.

2.      The Objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such Objections, are overruled on the merits.

<u>**Approval of the Sale Documents**</u>

3.      The Sale, and all of the terms and conditions thereof, as set forth in the APA is hereby approved.

4.      Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized to perform their obligations under and comply with the terms of the APA, and consummate the Sale, pursuant to and in accordance with the terms and conditions of the APA, subject to the satisfaction of the terms set forth in this Order and the disallowance or withdrawal of any and all timely objections to Debtors' releases as set forth in Paragraph 25.  If any objections filed under Paragraph 54 to the releases granted by the Debtors to BOT and CHF under Paragraph 25 are not withdrawn or overruled by a final order not subject to appeal, the approval of the Sale and authorization of the Debtors to perform their obligations as granted herein shall be null and void and of no further force or effect.

5.      Subject to Paragraph 4, the Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the APA, together with

additional instruments and documents that the Debtors or Purchaser or its designee deems necessary or appropriate to implement the APA and effectuate the Sale and to take all further actions as may be reasonably requested by Purchaser or its designee for the purpose of assigning, transferring, granting, conveying and conferring to Purchaser, or reducing to possession, the Acquired Assets or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA.

6.      Bruce Buchanan is hereby authorized and directed, to approve and sign all documents in connection with the transactions contemplated by the APA on behalf of the Debtors and to take, in his sole discretion, all actions necessary, required or appropriate to consummate such transactions on behalf of the Debtors, and such documents and actions are binding on the Debtors without any further additional corporate actions or approvals.

7.      This Order and the APA shall be binding in all respects upon all creditors, claimants of, and holders of equity interests in the Debtors and their successors and assigns (whether known or unknown), any holders of Interests, all successors and assigns of the Purchaser, the Debtors and their affiliates and subsidiaries, the Acquired Assets, and any subsequent trustees appointed in the Debtors' chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code and shall not be subject to rejection.

**<u>Transfer of Assets</u>**

8.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Acquired Assets shall be assigned and transferred to the Purchaser or its designee and upon the Closing shall be free and clear of all Interests of any kind or nature whatsoever, except as otherwise set forth in this Order.

9.      Except as otherwise provided by the APA or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax,

and regulatory authorities, lenders, tort claimants, litigants, trade and other creditors, holding Interests of any kind or nature whatsoever against or in the Debtors or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, or the Sale, are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, or the Acquired Assets, such persons' or entities' Interests.

10.     Notwithstanding anything herein to the contrary, personal property taxes for the 2008 tax year, plus any penalties and interest then due, are to be paid in full from the proceeds of the sale, at the time of Closing of the sale transaction, and the ad valorem tax liens for the 2009 tax year are hereby expressly retained on the Acquired Assets until the payment by the Purchaser or its designee of the 2009 ad valorem taxes, and any penalties or interest which may ultimately accrue to those 2009 taxes, in the ordinary course of business.

11.     Nothing in this Order or the APA shall be construed to release or nullify any liability to any governmental entity under police or regulatory requirements that any entity would be subject to as the owner or operator of the Acquired Assets after the Closing.

12.     The transfer of the Acquired Assets to the Purchaser or its designee pursuant to the APA constitutes a legal, valid, and effective transfer of the Acquired Assets and shall vest in the Purchaser or its designee with all right, title, and interest of the Debtors in and to the Acquired Assets, free and clear of all Interests of any kind or nature whatsoever, except as provided for herein.

13.     On the Closing of the Sale, each of the Debtors' creditors and any other holder of an Interest is authorized and directed, upon the reasonable request of the Debtors, to execute such

documents and take all other actions as may be reasonably necessary to reflect the release upon the Closing of the Sale and by operation of this Order, of its Interests in the Acquired Assets, if any, as such Interests may have been recorded or may otherwise exist. Such Interests shall attach to the proceeds of the Sale to the same extent and in the same order of priority that they existed in the Acquired Assets prior to the Closing of the Sale, except as provided for herein.

14. All claims of the estates including avoidance actions against third parties, shall remain property of the estates and any proceeds derived from the liquidation of the claims will be distributed through a Plan or distribution by a chapter 7 trustee.

15. All adequate assurance deposits made to the utilities post petition pursuant to this Court's previous order and other such assets as set forth in the APA are Retained Assets (as defined in the APA).

### Assumption and Assignment of the Assumed Contracts

16. Subject to and conditioned on Paragraph U above and the Closing of the transactions contemplated in the APA and the related sale documents, the Debtors are authorized pursuant to §§ 105(a) and 365(a) of the Bankruptcy Code to assume and assign to the Purchaser or its designee the Assumed Contracts on Exhibit 2, filed on February 5, 2009 as Docket No. 299.

17. All Assumed Contracts subject to the Sale Motion are in full force and effect and have not been terminated by operation of law, their own terms or otherwise. The Purchaser or its designee will execute an assignment and assumption agreement substantially in the form as attached as Exhibit B to the APA.

18. Upon Closing or as otherwise provided for in this Order and the APA, the Assumed Contracts shall be assigned to, and remain in full force and effect for the benefit of Purchaser or its designee in accordance with their terms, notwithstanding any provision in the Assumed Contracts (including, without limitation, those described in § 365(b)(2) and (e) of the

Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer, and, pursuant to § 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further obligation or liability for any breach of the Assumed Contracts occurring after such assumption and assignment. Any party that may have had the right to consent to the assignment of its Assumed Contract is deemed to have consented to such assignment for purposes of § 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise if such party failed to object to the assumption and assignment.

19.     Subject to Paragraph U above, any cure costs under any of the Assumed Contracts are hereby deemed adequately provided for and no additional amounts are owed by virtue of the provisions for payment of the Cure Costs by Debtors as set forth in the sale documents and other provisions of the APA and this Order, and the requirements of § 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied. The failure of the Debtors or the Purchaser or its designee to enforce any term or condition of any Assumed Contract shall not constitute a waiver of such term or condition or of the Debtors' or Purchaser's or such designee's rights to enforce every term and condition of the Assumed Contract.

**Provisions Related to Texas Capital Bank Lease**

20.     The Master Lease Agreement between Texas Capital Bank and Integra Hospital Plano, L.L.C. dated April 25, 2007, and the related schedules, exhibits, addenda, supplements, and other documents all of which have been amended from time to time (the "Texas Capital Lease") is rejected pursuant to 11 U.S.C. § 365 as of the earlier of the Closing Date of the Sale to Purchaser or as of February 17, 2009 ("Rejection Deadline"), if Closing has not occurred prior to the Rejection Deadline. The Rejection Deadline may be extended by mutual agreement in form of a stipulation between the Debtors and Texas Capital Bank, which shall be filed with the Court no later than February 13, 2009. Pursuant to 11 U.S.C. § 365(p) as of the rejection of the Texas

Capital Lease the 11 U.S.C. § 362 stay will be automatically terminated as to the assets leased pursuant to the Texas Capital Lease (the "Leased Assets") and the Leased Assets will no longer be property of the Debtors' estates. The Debtors disclaim and waive any right, title, or interest in the Leased Assets or the proceeds of the same and such disclaimer and waiver shall be binding on any successor trustee or in any subsequent proceeding under the Bankruptcy Code. No other party other than Texas Capital Bank has any right, title or interest in the Leased Assets or the proceeds of the same upon the rejection of the Texas Capital Lease. Texas Capital Bank waives any administrative priority claim against the Debtors for use of the Leased Assets during this bankruptcy case if a sale to the Purchaser closes. However pursuant to this Order, all 2008 personal property, or other similar taxes related to the Leased Assets shall be paid by the Debtors at Closing of the Sale. Nothing in this Order or any waiver of claim by Texas Capital Bank against the Debtors shall prejudice, limit, or waive Texas Capital Bank's rights against any third party or guarantor of the Texas Capital Lease. Additionally, nothing in this Order shall prejudice the right of the Debtors, the Official Committee of Unsecured Creditors or a subsequent trustee to object to or assert any defense to any claim asserted by Texas Capital Bank against the Debtors' estates. As used in this paragraph, the term "proceeds" does not include any cash, cash equivalents or accounts receivable generated by the Debtors' use of the Leased Assets in the ordinary course of their business before rejection.

21.     Texas Capital Bank and the Purchaser have agreed upon terms of a new lease for the Leased Assets, which new lease agreement shall include at a minimum: (1) a forty-two month term; (2) $55,000 per month basic rent; (3) a $175,000 purchase option at the end of the forty-two month term; and (4) other reasonable and customary lease provisions. The new lease agreement

shall be mutually acceptable to Texas Capital Bank and Purchaser and executed before the closing of the Sale, unless such requirement is mutually waived by Texas Capital Bank and Purchaser.

**Provisions Regarding Amerisource**

22.     Amerisource agrees to withdraw its objection and consents to the sale of the Acquired Assets.  In exchange for such withdrawal, the Debtors shall set aside, reserve, and hold in trust for the benefit of Amerisource the amount of $69,248.47 ("Amerisource Escrow").  The Amerisource Escrow (or such lesser amount as shall be sufficient to satisfy the Amerisource claim) shall be paid to Amerisource upon the earlier of:

a.     An agreement between the Debtor IHP and Amerisource as to the amount of the allowed prepetition claim of Amerisource and an agreement that Amerisource has a valid perfected security interest under state law in some or all of the assets being conveyed to the Purchaser; or

b.     An order of the Court determining the amount of the Amerisource prepetition claim and finding that Amerisource has a validly perfected security interest under state law in some or all of the assets being conveyed to the Purchaser.

23.     Amerisource and the Debtor IHP will make a good faith effort to reconcile their respective records to determine the actual amount of the Amerisource claim as soon as reasonably possible.  Amerisource and the Debtor IHP will promptly exchange relevant non-privileged documents reasonably necessary to accomplish this reconciliation.

24.     If Amerisource and the Debtor IHP are unable to reach agreement on the issues set forth above within a reasonable time, the Debtor IHP shall consent to have the Court determine these issues on an expedited basis.

**Provisions Regarding BOT and Contemporary**

25.     BOT and CHF agree to withdraw their objections and consent to the sale of the Acquired Assets.  In exchange for such withdrawal, the following provisions shall apply to the sale:

a.     [INTENTIONALLY OMITTED.]

b.     At the Closing, BOT and CHF shall execute a mutual agreement which releases any and all claims, liabilities, obligations and causes of action, of any nature, kind or character (whether arising in contract or tort, legal or equitable, and whether based on statutory or common law which either party ever had or now has against the other.

c.     At the Closing, BOT agrees to execute a release agreement which releases CHF from the obligations contained in that certain Subordination and Standstill Agreement dated April 10, 2008.

d.     The Debtors shall withdraw, as to CHF, their Objection to Secured Status and Motion to Avoid Liens of Amerisource Drug Corporation and Contemporary Healthcare Fund I, L.P. Pursuant to 11 U.S.C. §§  544 and 506 and Bankruptcy Rules 3012 and 7001.

e.     At the Closing, the following amounts shall be paid or reserved for payment (whichever is applicable as set forth in subparagraphs (i) --- (iii) below) from the purchase price paid by Purchaser at Closing, the cash on hand at Closing and any deposits or prepayments returned to the Debtors ("Available Cash"):

       i)     the expenses set forth in Debtors' Exhibit 9 (the "Waterfall") and in Debtors Exhibit 7 (the "Budget") through the Closing Date, which shall be no later than February 16, 2009, shall be reserved and paid by the Debtors;

      ii)     the amount of $500,000.00 shall be paid to Contemporary, which amount is being voluntarily relinquished by BOT from cash that would otherwise be payable to BOT on account of its first priority lien in the Debtors' assets and which payment to CHF shall be indefeasible and not subject to disgorgement;

iii)     the balance of the Available Cash shall be paid to BOT, which payment shall be indefeasible and not subject to disgorgement; and

iv)     the Amerisource Escrow.

f.      Prior to the Closing, CHF and the Committee shall have entered into an agreement regarding prosecution of the Debtors' causes of action and the sharing of proceeds from prosecution of such causes of action, unless this condition is waived by CHF.

g.      The Debtors, or a Chapter 7 Trustee in the event of conversion of these cases to Chapter 7, shall have a period of ninety (90) days from the date of entry of this Order or from the appointment of a Chapter 7 Trustee, whichever shall last occur (provided a Chapter 7 Trustee is appointed within 30 days), to file any litigation against BOT and/or Contemporary asserting any claim, liability or cause of action held by the Debtors against BOT and/or Contemporary.  In the event no litigation is filed within such time period, all claims, liabilities, objections and causes of action of any nature, kind or character (whether arising in contract or tort, legal or equitable, and whether based on statutory or common law) which the Debtors ever had or now have shall be deemed released and discharged by operation of this Order.  If any litigation is timely filed, any such claim or cause of action not timely asserted in such litigation shall be deemed released and discharged by operation of this Order.

h.      The provisions of this Paragraph 25 shall be of no force or effect and not enforceable in the event the sale of the Acquired Assets to the Purchaser under the APA fails to close.

i.      CHF shall provide all third party reports and other assistance concerning the Debtors (as described in the representations of its counsel in the Court's record at the Sale Hearing) to the Purchaser. Such reports shall be provided at the Closing.

**Additional Provisions**

26.     The representations and warranties of any of the Debtors required by the Bid shall not survive the Closing, except as to the representations and warranties as set forth in the APA.

27.     The stay of this Order provided in Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure is hereby lifted to allow for an immediate Closing of the Sale.

28.     The consideration provided by the Purchaser, pursuant to the APA (i) is fair and reasonable, (ii) is the highest and best offer for all assets of the Debtors, other than the Retained Assets, (iii) will provide a greater recovery to the Debtors' estates than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code.

29.     The consideration provided by the Purchaser for the Debtors' assets under the APA is deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

30.     The consideration provided by the Purchaser for the Acquired Assets under the APA is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

31.     This Order (a) shall be effective as a determination that, at Closing, all Interests of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing have been unconditionally released, discharged and terminated as to the Acquired Assets and except as otherwise provided herein, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other

persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets.

32.     Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents, instruments, and permits necessary and appropriate to consummate the transactions contemplated by the APA.

33.     All entities that are in possession of some or all of the Acquired Assets on the Closing Date are hereby directed to surrender possession of the Acquired Assets to the Purchaser or its designee at the Closing.

34.     This Court retains jurisdiction to enforce and implement the terms and provisions of this Order, the APA, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Purchaser or its designee, (b) compel delivery of the purchase price or performance of other obligations owed by or to the Debtors, (c) resolve any disputes arising under or related to the APA, except as otherwise provided therein, and (d) interpret, implement, and enforce the provisions of this Order.

35.     The transactions contemplated by the APA are undertaken by the Purchaser, without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization is duly stayed pending such appeal.  The Purchaser or its designee is a purchaser in good faith of the

Acquired Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

36.      The terms and provisions of the Bid and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors, the Purchaser and their respective affiliates, successors, and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Acquired Assets, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

37.      Nothing contained in any plan of reorganization confirmed in this case or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the APA or the terms of this Order.  In the event a provision in a plan of reorganization or order of this Court conflicts inadvertently with the terms of this Order or the APA, this Order and/or the APA shall control and govern.

38.      The failure specifically to include any particular provisions of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA is authorized and approved in its entirety.

39.      The Bid, the APA and any related sales documents, or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not conflict with the terms of this Order or have a material adverse effect on the Debtors' estates and provided further that BOT, Amerisource, CHF and the Committee is given reasonable prior written (including by email) notification of such modification, amendment or supplement, and such parties do not object to such modification, amendment or supplement.

40.     The Purchaser shall wire or provide a cashiers check payable to the Debtors in the amount of $6,780,000 (less the aggregate amount of all purchase price adjustment contemplated by the APA) at the Closing.  The $100,000 Good Faith Deposit held in Cox Smith Matthews Incorporated trust account shall be applied to and shall decrease the amount owed at the Closing.

**Provisions Relating to Government Receivables, Licenses and Provider Numbers**

41.     Upon closing, the hospitals' licenses; Federal, State, and third party provider agreements; accreditations and all other certificates, permits, and approvals required for operation of the hospitals, subject to providing appropriate notice to the relevant agencies and only to the extent as permitted under applicable law, are transferred to the Purchaser or its designee.

42.     Neither the Purchaser nor its designee shall have any successor liability for any claims accruing against the Debtors prior the Closing date, except that the Purchaser or its designee will assume and be liable for the Medicaid and Medicare overcharge/overpayment liability, if any, of the Debtors for the years 2007 and 2008 to the Closing Date.

43.     Except as otherwise provided herein, nothing in this Order determines or establishes the extent, priority and/or liability of any lien or liens asserted against Debtors' accounts receivable or other property, or establishes, for claim or lien determination purposes, the value of this purchase.

44.     By purchasing the Acquired Assets, the Purchaser expressly warrants and represents that Purchaser or its designee is authorized or in the process of becoming authorized by having made application with the appropriate agencies under applicable state and federal law to acquire any pharmaceuticals, medical devices and/or radiation equipment being sold.

45.     Notwithstanding anything to the contrary in the APA or this Order, nothing in this Order or the APA (i) releases or nullifies any liability the Purchaser has to the Texas Department of State Health Services (DSHS) or other state or federal agency under statutes or regulations to

which that entity would be subject as the owner or operator of the property after the date of Closing, just as if this sale had taken place outside bankruptcy [by way of example but not limitation, compliance with 25 TAC 289.226(n) regarding the duty to notify DSHS if the sale/transfer of any radiation machines] or (ii) impairs or restricts DSHS's ability to pursue all rights and remedies in state court against the Purchaser after the Closing.

46.     Notwithstanding anything contained herein to the contrary, nothing herein shall affect the rights of the United States Department of Health and Human Services ("HHS") from exercising its rights of setoff and/or recoupment, but the Debtors or the Purchaser and its designee shall retain their rights to exhaust administrative remedies to contest the dollar amount of any set-off and/or recoupment effectuated or to contest amounts before this Court, if this Court has jurisdiction thereof.

47.     HHS reserves the right to contest the exercise of this Court's jurisdiction over any disputed setoff and/or recoupment amount and to argue in favor of having such matter(s) heard before the administrative tribunal(s) that regularly adjudicates such issues.

48.     The Purchaser or its designee will, notwithstanding any term or order herein, assume and be liable to the HHS for the Medicare overcharge/overpayment liability of the Debtors for the years 2007 and 2008 to the Closing Date, and, further, the Purchaser or its designee agrees to repay such in terms acceptable to HHS.

49.     The Purchaser shall adopt either the Debtors' privacy policies which are currently in place or shall adopt alternative privacy policies that fully provide better protection under state and federal statutes, including but not limited to HIPAA (Health Insurance Portability and Accountability Act), to protect personally identifiable information, as that term is defined in 11 U.S.C. § 101(41A).

50.     The Purchaser or its designee shall assume custody and control of patient records, as that term is defined at 11 U.S.C. § 101(40B) and shall maintain them in compliance with state and federal laws and regulations including, but not limited to regulations promulgated pursuant to HIPAA (Health Insurance Portability and Accountability Act).

51.     The Purchaser shall allow Debtors or their successors reasonable access to such patient records for billings, audits and as necessary to enable the Debtors to investigate or defend claims.

52.     Upon Closing, the Purchaser or its designee shall be responsible for caring for patients of the Debtors and shall assume all hospital operations.

53.     Notwithstanding anything herein to the contrary, personal property taxes for the 2008 tax year, plus any penalties and interest then due, are to be paid in full from the proceeds of the sale, at the time of the Closing of the sale transaction, and the ad valorem tax liens for the 2009 tax year are hereby expressly retained on the Acquired Assets until the payment by the Purchaser of the 2009 ad valorem taxes, and any penalties or interest which may ultimately accrue to those 2009 taxes, in the ordinary course of business.

54.     The Debtors shall file and serve notice of its intent to release any and all claims they may have against BOT and/or CHF to all creditors no later than January 23, 2009.  The Notice shall provide that the creditor must file and serve its objection, if any, to such release no later than seven (7) days from the date of the mailing.  If an objection is filed, the objection shall be heard and determined by the Court on February 2, 2009 at 1:30 p.m.  If no objections are filed by January 30, 2009, the releases as to BOT and CHF shall be effective upon Closing.

55.     On January 27, 2009, the Purchaser shall file and serve notice on the non-debtor party to each executory contract or non-expired lease of its intention to acquire such contract or

lease effective on the Closing Date. Any objections to the assumption or assignment of the contract or lease shall be heard on February 2, 2009 at 1:30 p.m.

56. The Debtors represent that no payments are being made to any creditor from the sales proceeds which are inconsistent with the priority scheme set forth under the Bankruptcy Code. Exhibit 3, filed on February 5, 2009 as Docket No. 299, is a chart setting out the distributions to be made at Closing from the sales proceeds paid by the Purchaser, cash on hand and deposits or prepayments returned to the Debtors.

57. Exhibits 1, 2 and 3 referenced herein are available upon request to the undersigned counsel for Debtors.

Signed on 2/5/2009

*Brenda T. Rhoades*          SR

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

**AGREED AS TO FORM AND TO SUBSTANCE**

COX SMITH MATTHEWS INCORPORATED
112 E. Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (Fax)

By:   */s/ Carol E. Jendrzey*
     Mark E. Andrews
     Texas State Bar No. 01253520
     Carol E. Jendrzey
     State Bar No. 10617420
     Lindsey D. Graham
     State Bar No. 24055412

**ATTORNEYS FOR THE DEBTOR
AND THE DEBTOR-IN-POSSESSION**

REBECCA A. GREGORY
UNITED STATES ATTORNEY
110 North College Street, Suite 700
Tyler, Texas 75702
(903) 590-1400
(903) 590-1436 (Fax)

By:   */s/ Ruth Harris Yeager*
      Ruth Harris Yeager
      Assistant United States Attorney
      Texas State Bar No. 09092700

**ATTORNEYS FOR THE SECRETARY OF
THE UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES AND
THE CENTERS FOR MEDICARE &
MEDICAID SERVICES**

JACKSON WALKER, L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 953-6000
(214) 953-5822 (Fax)

By:   */s/ Kenneth Stohner, Jr.*
      Kenneth Stohner, Jr.
      State Bar No. 19263700

**ATTORNEYS FOR BANK OF TEXAS, N.A.**

PATTON BOGGS, LLP
2001 Ross Avenue, Suite 3000
Dallas, Texas 75201
(214) 758-1500
(214) 758-1550 (Fax)

By:   */s/ H. Jefferson LeForce*
      H. Jefferson LeForce
      Texas State Bar No. 00791094

**ATTORNEYS FOR TEXAS CAPITAL BANK, N.A.**

FARRELL FRITZ, P.C.
1320 RexCorp Plaza
Uniondale, New York 11556-1320
(516) 227-0700
(516) 227-0777 (Fax)


By:     */s/ Ted A. Berkowitz*
        Ted A. Berkowitz
        Patrick Collins

**ATTORNEYS FOR CONTEMPORARY
HEALTHCARE FUND I, L.P.**

LAW OFFICES OF ROBERT E. LUNA, P.C.
4411 North Central Expressway
Dallas, Texas 75205
(214) 521-8000
(214) 521-1738 (Fax)


By:     */s/ Andrea Sheehan*
        Andrea Sheehan
        Texas State Bar No.  24002935

**ATTORNEYS FOR LEWISVILLE
INDEPENDENT SCHOOL DISTRICT**

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS, LLC
260 S. Broad Street, Suite 400
Philadelphia, PA 19102-5003
(215) 569-3007
(215) 568-6603 (Fax)


By:     */s/ Morton R. Branzburg*
        Morton R. Branzburg

**ATTORNEYS FOR AMERISOURCEBERGEN
DRUG COMPANY**

MCCREARY, VESELKA, BRAGG & ALLEN, P.C.
P.O. Box 1269
Round Rock, Texas 78680
(512) 323-3200
(512) 323-3205 (Fax)

By: ___/s/ Michael Reed_____
      Michael Reed
      Texas State Bar No. 16685400

**ATTORNEYS FOR COUNTY OF DENTON**

SINGER & LEVICK, P.C.
16200 Addison Road, Suite 140
Addison, Texas 75001
(972) 380-5533
(972) 380-5748 (Fax)

By: ___/s/ Michelle E. Shriro_____
      Michelle E. Shriro
      Texas State Bar No. 18310900

**ATTORNEYS FOR ROCKWALL REHAB HOSPITALS, LTD.**

LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 891-7319
(213) 891-8763 (Fax)

By: ___/s/ Heather L. Fowler_____
      Heather L. Fowler

**ATTORNEYS FOR HCP**

GREENBERG TRAURIG, LLP
2200 Ross Ave., Suite 5200
Dallas, TX 75201
(214) 665-3637
(214) 665-5937 (Fax)

By:    * /s/ William L. Medford*            
       William L. Medford
       Texas State Bar No. 00797060

**ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**